UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BETTY GUERNSEY CAVAZOS,

              Plaintiff,             **6:17-cv-06852-MAT**

    -v-                        **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

              Defendant.
_____

## INTRODUCTION

Betty Guernsey Cavazos ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On June 30, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of January 1, 2013, due to anxiety, panic attacks, severe depression, herniated discs in her back, pinched nerves, and posttraumatic stress disorder ("PTSD").

Administrative Transcript ("T.") 117-18. The claims were initially denied on September 15, 2014. T. 141-47.

On November 7, 2014, the Social Security Administration ("SSA") sent Plaintiff a notice memorializing her statements made verbally to an administrative representative On October 30, 2014, regarding, *inter alia*, her request for an in-person hearing as opposed to a video teleconference. T. 152. On November 17, 2014, the SSA confirmed receipt of Plaintiff's request and advised her that, in certain situations, video teleconference hearings are held in place of in-person hearings. T. 154. The SSA included an "Objection to Appearing by Video Teleconference" form for Plaintiff to return within thirty (30) days of the confirmation notice, if she objected to a video teleconference hearing. T. 155-57. On December 31, 2014, Plaintiff submitted a signed "Objection to Appearing by Video Teleconference" form to the SSA. T. 175.

On September 4, 2015, the SSA sent a hearing transfer notice to Plaintiff and her attorney advising that Plaintiff's hearing would be held via video teleconference from the National Hearing Center in Falls Church, Virginia. T. 176-81. On September 17, 2015, Plaintiff's attorney requested the hearing be transferred to the Rochester, New York office for an in-person hearing. T. 186-87.

ALJ John Murdock reviewed Plaintiff's transfer request and issued a ruling on January 15, 2016, that she failed to show good cause for missing the original thirty-day deadline to object to a

video teleconference hearing. T. 190-92. Accordingly, ALJ Murdock denied the transfer request. *Id.*

A hearing was conducted on August 9, 2016, in Falls Church, Virginia, by ALJ Michael Carr ("the ALJ"), with Plaintiff appearing with her attorney via video teleconference in Syracuse, New York. A vocational expert ("VE") also testified. T. 44-88. The ALJ issued an unfavorable decision on January 11, 2017. T. 11-24. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on October 25, 2017, making the ALJ's decision the final decision of the Commissioner. T. 2-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(b). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. T. 16.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. *Id.*

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: obesity; lumbar spine degenerative changes; anxiety disorder; PTSD; and unspecified depressive disorder. *Id.* Although Plaintiff had the medically determinable

impairment of sleep apnea, the record demonstrated that this impairment had no more than a minimal impact on Plaintiff's work-related functional abilities. Accordingly, the ALJ found Plaintiff's sleep apnea to be non-severe. T. 17.

At step three, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; is limited to performing simple, routine tasks; is limited to making simple work-related decisions; requires a work environment where change is minimal; can tolerate occasional contact with supervisors and coworkers; and cannot tolerate contact with the general public. T. 18-19.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. T. 22. At step five, the ALJ relied on the VE's testimony to find that there are unskilled jobs existing in the national economy Plaintiff is able to perform, including the representative occupations of cleaner, bagger, and

marking clerk. T. 22-23. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 23.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) Plaintiff did not receive the in-person hearing to which she was entitled; and (2) the ALJ failed to properly apply the treating physician rule to Dr. Odysseus Adamides' opinion. For the reasons discussed below, the Court affirms the Commissioner's final determination.

**I.    Plaintiff's Challenge That She Failed to Show Good Cause for Missing the Deadline to Object to a Video Teleconference Hearing Is Not Subject to Judicial Review**

Plaintiff argues that remand is warranted because the SSA provided her with a video teleconference hearing rather than an in-person hearing, as she requested when she filed her initial request for a hearing. For the reasons set forth below, this Court lacks jurisdiction to consider this issue.

**A.    Plaintiff Failed to Submit an Objection to a Video Teleconference Hearing Within the Required Time Frame**

As discussed above, Plaintiff applied for DIB and SSI on June 30, 2014. T. 117. When her claim was denied, Plaintiff requested an in-person hearing before an ALJ. T. 152. On November 17, 2014, the SSA confirmed receipt of Plaintiff's request and advised Plaintiff that video teleconference ("VTC") hearings are held in place of in-person hearings in certain situations. T. 154. The notice stated in pertinent part as follows:

**You must let us know within 30 days after the date you receive this notice if you do not want to appear at our hearing by VTC.** (We may extend the 30-day period if you show you had good cause for missing the deadline.) **Please let us know by completing and returning the attached form in the envelope we sent you**. We will arrange for you to appear in person.

T.155 (emphases in original). Thus, if Plaintiff objected to a video teleconference hearing, she was required to complete and mail the enclosed form, "Objection to Appearing by Video Teleconference," within thirty (30) days of November 17, 2014, the date of confirmation notice. T. 155-57. It was not until forty-four (44) days later, on December 31, 2014, that Plaintiff signed and dated the "Objection to Appearing by Video Teleconference" form. T. 175.

On September 17, 2015, after receiving a notice stating that Plaintiff's hearing would be held via video teleconference, Plaintiff's attorney requested that the hearing be converted to an in-person hearing to be held in Rochester, New York. T. 186-87. ALJ Murdock reviewed the request and Plaintiff's file, and found that Plaintiff had failed to show good cause for missing the original thirty-day deadline to object to a video teleconference hearing. T. 190-92. The ALJ informed Plaintiff in the ruling that "[t]his ruling is final and cannot be appealed." T. 190. Plaintiff asserts that she is entitled to remand because ALJ Murdock's good cause ruling was erroneous. However, as explained in detail below, the

ALJ's good cause ruling is not an "initial determination" subject to the SSA's administrative review process and judicial review.

## B. An ALJ's Good Cause Ruling Is Outside of the Scope of This Court's Jurisdiction

"A district court's subject matter jurisdiction over the denial of Social Security disability benefits is limited." *Smith v. Barnhart*, 293 F. Supp.2d 252, 254 (E.D.N.Y. 2003) (citing 42 U.S.C. § 405(g), (h)). Under section 205(h) of the Act, 42 U.S.C. § 405(h), the Commissioner's decisions are not reviewable except as provided in section 205(g) of the Act, 42 U.S.C. § 405(g). *Maloney v. Harris*, 526 F. Supp. 621, 622 (E.D.N.Y. 1980) (citing *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)), *aff'd*, 657 F.2d 264 (2d Cir. 1981). Section 205(g) of the Act provides that judicial review is only available to "any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he [or she] was a party." 42 U.S.C. § 405(g). "This provision clearly limits judicial review to a particular type of agency action, a 'final decision of the [Commissioner] made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977). In order to become a "final decision," a decision must first qualify as an "initial determination" from the Commissioner. *See* 20 C.F.R. §§ 404.900(a)(1), 416.1400(a)(1) (An "[i]nitial determination . . . is a determination we make about your entitlement or your continuing entitlement to benefits or about any other matter, as

discussed in [20 C.F.R.] § 404.902, *that gives you a right to further review*.") (emphasis supplied). While other types of administrative actions may be reviewed by the *agency*, they are not subject to the administrative review process "*and they are not subject to judicial review*." 20 C.F.R. §§ 404.903, 416.1403 (emphases added). The regulations set forth a non-exhaustive list of actions that are *not* initial determinations; these include "[d]enying your request to extend the time period for requesting review of a determination or a decision. . . ." 20 C.F.R. §§ 404.903(j); 416.1403(j).

The Court finds that ALJ Murdock's good cause ruling is not subject to judicial review. First, it was not made after a hearing, but instead was made based on the paper record. *See* T. 191 (ALJ Murdock stated that he "reviewed the explanations from the claimant and her counsel, received on September 17 and September 23, 2015 (Exs. B9B and B10B), to determine whether there was 'good cause' for missing the deadline."). Second, courts in this Circuit and elsewhere have held that administrative actions similar to ALJ Murdock's good cause ruling are not reviewable in court. *See Dietsch v. Schweiker*, 700 F.2d 865, 867 (2d Cir. 1983) ("The Appeals Council may also extend the filing time on a showing of good cause, 20 C.F.R. § 404.968(b), but a refusal to do so, like a dismissal of an untimely request [for review], is not subject to judicial review.") (citing *Watters v. Harris*, 656 F.2d 234, 239–40

(7th Cir. 1980) (claimant may not be allowed judicial review simply by filing a request with SSA and being denied an opportunity to extend the time of complying with administrative filing deadline), *overruled on other grounds*, *Boley v. Colvin*, 761 F.3d 803 (7th Cir. 2014); *Sheehan v. Sec'y of Health, Ed. & Welfare*, 593 F.2d 323, 325 (8th Cir. 1979) ("A request to extend the time for filing a review petition may be denied without a hearing under 42 U.S.C. [§] 405(b). Accordingly, this type of decision is not normally subject to judicial review."); *Maloney v. Harris*, 526 F. Supp. 621, 622 (E.D.N.Y. 1980); *see also Colman v. Sec. of HHS*, No. 94-CV-6282T, 1994 WL 808125, at *2 (W.D.N.Y. Nov. 28, 1994) ("The SSA's determination of whether or not to grant an extension of time is discretionary and is not subject to administrative or judicial review") (citing 20 C.F.R. § 404.903(j)).

Administrative good cause rulings are not considered "initial determinations" and do not fall within the scope of subsequent steps leading to a "final decision" reviewable by a district court. Accordingly, the ALJ's good cause ruling denying Plaintiff's untimely objection to a video teleconference hearing is not subject to judicial review.

### C. The ALJ Did Not Err When Making His Good Cause Ruling

In the alternative, even if the ALJ's good cause ruling were reviewable, the Court finds that Plaintiff has failed to

demonstrate the ALJ erred in declining to find good cause for the missed deadline.

Upon review of Plaintiff's September 17, 2015 request for the hearing to be transferred to an in-person hearing, the ALJ found that Plaintiff missed the deadline to object to a video teleconference hearing. T. 190. Prior to rendering his decision, the ALJ considered the factors set forth in 20 C.F.R. §§ 404.911 and 416.1411, which include an examination of the circumstances that kept Plaintiff from making a timely request; whether the SSA's action misled Plaintiff; whether Plaintiff did not understand the requirements of the Act; and whether Plaintiff had any physical, mental, educational, or linguistic limitations that prevented her from filing a timely request, or from understanding or knowing about the need to file a timely request. *Id.*; *see also* T. 191.

Plaintiff's attorney asserted that there was good cause because he did not receive a copy of the notice containing the rules for objecting to a video teleconference. T. 192. The ALJ found this argument "unpersuasive" because the "right of objection to VTC rests with the claimant, not the representative." *Id.* (citing 79 FR 35926-01, 2014 WL 2859881 (June 25, 2014) (emphasizing that the claimant make the objection to the video teleconference hearing)). The ALJ further found that the notice plainly set forth the thirty-day window for objecting to a hearing by video teleconference and that the record failed to demonstrate

Plaintiff was unable to comprehend the notice or inform her attorney that she received it. T. 192. To the contrary, the ALJ found, the evidence showed that Plaintiff was able to comprehend and provide information in other forms provided by the SSA. *Id.* Therefore, the ALJ concluded, the fact that Plaintiff's attorney allegedly did not receive a copy of the hearing notice did not constitute good cause for Plaintiff's untimely objection.

Plaintiff now argues that her objection to a video teleconference hearing was not late because her initial request for a hearing specifically included the request for an in-person hearing. (Docket No. 10, pg. 12 *referring to* T. 152). For the reasons set forth below, this argument lacks merit.

The regulations allowing for objections to a video teleconference hearing state "[i]f you object to appearing by video teleconferencing, you must notify [the SSA] *in writing* within 30 days *after* the date you receive the notice." 20 C.F.R. §§ 404.936(d), 416.1436(d) (emphasis added). Accordingly, Plaintiff's *verbal* request for an in-person hearing when completing her initial application on October 30, 2014 fails to meet this requirement for a valid objection under 20 C.F.R. §§ 404.936(d), 416.1436(d).

Plaintiff further argues that her failure to submit a written objection within the thirty-day time frame should be excused because her attorney did not receive a copy of the hearing notice,

despite Plaintiff verbally informing the SSA she was represented by counsel. This argument is without merit.

On October 30, 2014, Plaintiff verbally requested a hearing and stated she was represented by counsel. T. 152-53. On November 17, 2014, the SSA confirmed Plaintiff's hearing request. T. 154-56. The record indicates Plaintiff's attorney filed the required appointment of representative forms with the SSA on December 7, 2014 - twenty days after the agency mailed Plaintiff the hearing notice. *See* T. 150-51, 154-56. To be recognized by the SSA as a claimant's representative, agency regulations clearly provide the agency must receive a written notice appointing the representative. *See* 20 C.F.R. §§ 404.1707, 416.1507; *see also* SSA Program Operations Manual System (POMS) GN 03910.040, 2001 WL 1929676, *Appointment and Revocation of Appointment of Representative* ("A claimant's appointment, or revocation of an appointment, of a person as his or her representative must be in *writing*, and must be *filed* with SSA.") (emphasis added). Morever, and as the ALJ noted in his good cause ruling, the right to object rests with a claimant—not the claimant's representative. T. 192 (citing 79 FR 35926-01). Accordingly, Plaintiff's argument that her attorney should have received a copy of the notice because she gave verbal notification to the SSA on October 30, 2014 that she was represented by counsel fails.

Finally, Plaintiff's cursory argument that her mental limitations prevented her from timely filing a written objection also fails. As the ALJ found in his January 2016 good cause ruling, the evidence of record fails to demonstrate Plaintiff was unable to comprehend the notice or inform her representative that she received the notice. T. 192. The ALJ noted Plaintiff was able to comprehend and provide the information required at other steps in the application process. *Id*. While 20 C.F.R. § 404.911(a)(4) requires the agency to consider whether a claimant had "any physical, mental, educational, or linguistic limitations . . . which prevented [the claimant] from filing a timely request," Plaintiff has failed to demonstrate her mental limitations specifically prevented her from notifying her representative of the hearing notice or timely filing the objection form she received, while she was capable of adhering to other requirements in the disability application process.

Accordingly, for the reasons set forth above, the ALJ's finding that Plaintiff failed to show good cause for missing the thirty day deadline to object to a video teleconference hearing remains unchanged.

## II. Evaluation of the Opinion of Plaintiff's Treating Physician

Plaintiff also contends that ALJ Carr failed to properly comply with the treating physician rule when he gave little weight to the joint opinion of Plaintiff's treating psychiatrist,

Dr. Adamides and treating therapist, Erika Burgess-O'Lena, LMSW. For the reasons set forth below, the Court disagrees.

Under the Commissioner's regulations applicable at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with the other substantial evidence of record. *See also Green-Younger*, 335 F.3d at 106. A report completed by an "other source," such as a social worker or therapist, is also eligible for treating source deference when the report has been reviewed and approved by a treating physician. *See Williams v. Colvin*, No. 15-CV-6136, 2016 WL 5468336, at *10 (W.D.N.Y. Sept. 28, 2016) (stating "functional reports produced and signed by plaintiff's therapists *and* [treating physician] constitut[ed] proper treating source opinions") (emphasis in original); *see also McAninch v. Astrue*, 2011 WL 4744411, at *15 (W.D.N.Y. Oct. 6, 2011) ("There is no legal principle which states that a doctor must personally write out a report that he or she signs in order for it to be accorded controlling weight."); *Keith v. Astrue*, 553 F. Supp.2d 291, 301 (W.D.N.Y. 2008) (Stating that social workers notes signed by a psychiatrist should be evaluated "in accordance with the treating physician rule").

If an ALJ assigns less than controlling weight to a treating physician's opinion because it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" when determining what weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)).

On June 5, 2015, LMSW Burgess-O'Lena completed a Evaluation of Mental Work Limitations on Plaintiff's behalf. T. 578-81. On June 9, 2015, Dr. Adamides signed the completed evaluation. T. 581. The Court notes that the opinion falls under the treating physician rule, having been signed by Dr. Adamides. *See Williams*, 2016 WL 5468336, at *10.

In the June 2015 opinion, Dr. Adamides and LMSW Burgess-O'Lena opined that Plaintiff has "moderate" limitations in her ability to remember work procedures, communicate effectively, appropriately work in coordination with or in proximity to co-workers, interact appropriately with the general public, maintain regular attendance and be punctual within customary tolerances, perform at a consistent pace, and make simple work-related decisions. T. 578-79. They also opined that Plaintiff has "marked" limitations in her ability to concentrate and attend to simple work tasks, and tolerate customary work pressures in a work setting including ordinary job goals, production requirements, and demands. T. 579-80. The opinion noted that Plaintiff would be expected to be absent from work more than four days per month as a result of her impairments or treatment. It further noted that Plaintiff was "unable to work currently but if she were she would not be able to work every day or long hours. Work is not recommended at this time." T. 581.

In his decision, the ALJ permissibly gave "little weight to the standard-form checklists by providers," referring to the opinion submitted by Dr. Adamides and LMSW Burgess-O'Lena. T. 21. The ALJ noted that while signed by a doctor, the form was completed by a social worker who "summarized complaints and used those complaints to justify extreme limits inconsistent [with] her own psychotherapy notes." *Id*. The ALJ also noted that a strong

treatment relationship was lacking at the time the opinion was completed. The Court finds no error in this assessment of the joint opinion of Dr. Adamides and LMSW Burgess-O'Lena.

The record indicates that at the time the opinion was completed, Dr. Adamides had seen Plaintiff three times - once approximately every three months. T. 460, 548, 573. In particular, a treatment note dated October 24, 2015 and signed by multiple providers, Dr. Adamides noted Plaintiff was "still doing well" with her current prescriptions and was complaining of less panic when alone in public places. T. 460. The exact same notation was made in treatment notes dated January 30, 2015 and April 15, 2015. T. 548, 573. This appears to be the extent of Dr. Adamides' treatment of Plaintiff at the time the June 2015 opinion was made.

A progress note dated the same day as LMSW Burgess-O'Lena completed the June 2015 opinion noted that Plaintiff and LMSW Burgess-O'Lena "worked together to complete" the Evaluation of Mental Work Limitations. T. 576. In his decision, the ALJ noted LMSQ Burgess-O'Lena "summarized [Plaintiff's] complaints and used those complaints to justify extreme limits inconsistent [with] her own psychotherapy notes." T. 21. Based on its review of the medical records, the Court finds that the ALJ's rationale is supported by substantial evidence. LMSW Burgess-O'Lena had treated Plaintiff in individual therapy sessions six times and in group therapy four times at the time the June 2015 opinion was made. (Docket No. 10,

pg. 20). Upon review of the medical record, the Court notes that at each of the individual sessions, LMSW Burgess-O'Lena noted that Plaintiff appeared well groomed, friendly and cooperative, exhibited good eye contact, and fair insight, but was distracted due to life challenges. *See* T. 551, 553, 555, 560, 564, 572. Following the fourth session, LMSW Burgess-O'Lena noted Plaintiff began exhibiting improved impulse control. *See* T. 564, 574. Despite these and Dr. Adamides' unremarkable and limited treatment observations, the joint opinion indicates Plaintiff had disabling conditions and further made the conclusory statement that Plaintiff was "unable to work currently but if she were she would not be able to work every day or long hours." T. 581.

The ALJ found the questionnaire's "overly vague and unsupported comments like 'client decompensates under stress'" to be "wholly unsubstantiated by inpatient treatment, significant outpatient treatment requiring additional therapy, or other events." T. 21, 580. The ALJ observed that Plaintiff rated her depression and anxiety as low as 3 or 4 out of 10, suggesting mild symptoms, and repeatedly told Dr. Adamides she was doing well with medication, with less panic when alone in public places. T. 20; T. 460, 548, 573. Those were valid factors for the ALJ to consider under the regulations, which provide that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R.

§§ 404.1527(c)(4), 416.927(c)(4); *see also Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order) (finding ALJ properly declined to accord controlling weight to the opinions of plaintiff's treating physician where those opinions were internally inconsistent and inconsistent with other substantial evidence of record).

The Court further finds Plaintiff's argument that the ALJ was mistaken in classifying the Dr. Adamides and LMSW Burgess-O'Lena's opinion as a "check off report" because LMSW Burgess-O'Lena included comments in the report which were unconvincing. *See* T. 578-81. Courts in this Circuit have consistently held that "lack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less weight." *Wright v. Colvin*, No. 5:12-cv-0440, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (describing a standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens-Feliciano v. Astrue,* No. 6:11-cv-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form

20

reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Although LMSW Burgess-O'Lena included comments for many of the check-the-box answers on the report, the comments were based on Plaintiff's subjective complaints, rather than clinical or laboratory findings. *See, e.g.* T. 579, ("Client struggles around others and prefers to work or be independent due to intense feelings of pressure." "Client is easily distracted and easily overwhelmed forgetful and feels intense pressure."). The ALJ also noted in his decision that Dr. Adamides and LMSW Burgess-O'Lena's opinion that Plaintiff was "unable to work currently but if she were she would not be able to work everyday for long hours" is conclusory and not supported with specific functional loss described in medical terms. T. 21. Again, this was a proper factor for the ALJ to consider under the regulations. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings . . . [and] [t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

For the foregoing reasons, the Court finds that the ALJ complied with the treating physician rule by providing "good reasons" supported by "substantial evidence" for affording limited

weight to the joint opinion of Dr. Adamides and LMSW Burgess-
O'Lena.

## CONCLUSION

For the foregoing reasons, the Court finds that the
Commissioner's decision is not legally erroneous and is supported
by substantial evidence. Accordingly, Plaintiff's motion for
judgment on the pleadings (Docket No. 10) is denied and the
Commissioner's motion for judgment on the pleadings (Docket No. 12)
is granted. The Clerk of the Court is directed to close this case.


**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
    HON. MICHAEL A. TELESCA
United States District Judge


Dated:    December 21, 2018
          Rochester, New York